UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-61463-DIMITROULEAS/AUGUSTIN-BIRCH

**Edwidg Eugene,**

    **Plaintiff,**

v.

**GoodLeap, LLC, Modern Concepts Construction, LLC, and Modern Concepts Solar and Roofing, Inc.**

    **Defendants.**
_____/

REPORT AND RECOMMENDATION ON
DEFENDANT GOODLEAP, LLC'S AMENDED
MOTION TO DISMISS AND TO COMPEL ARBITRATION [DE 9]

This cause comes before the Court on Defendant GoodLeap, LLC's Amended Motion to Dismiss and to Compel Arbitration. The Honorable William P. Dimitrouleas, United States District Judge, has referred the Amended Motion to Dismiss and to Compel Arbitration to the undersigned United States Magistrate Judge for a report and recommendation. DE 22. The Court has carefully considered the Amended Motion to Dismiss and to Compel Arbitration, the record, and is otherwise fully advised. For the reasons set forth below, the Court **RECOMMENDS** that the Motion be **GRANTED IN PART and DENIED IN PART**. The Court further **RECOMMENDS** that Plaintiff Edwidg Eugene be **COMPELLED TO ARBITRATE** his claims against Defendant GoodLeap, and for those claims to be **STAYED** pending arbitration.

I. BACKGROUND

In state court, Plaintiff Edwidg Eugene filed a six-count complaint against all three Defendants. DE 1 at 6. According to Plaintiff's complaint, Defendant Modern Concepts

Construction, LLC ("MC Construction") provides construction and solar materials to Defendant Modern Concepts Solar and Roofing Inc. ("MC Solar"), which in turn installs roofing and solar systems for homeowners, and Defendant GoodLeap LLC, a financing company that provides home improvement loans for homeowners, paid for the products and services of the other two Defendants. *Id.* at 6–7.

For his factual allegations, Plaintiff stated that he met with representatives from MC Solar at his property regarding having solar panels installed on his home. *Id.* at 7. Plaintiff claimed that MC Solar assured him that the solar system would eliminate his electric bill, and, in May of 2022, MC Solar presented Plaintiff with a purchase contract for a solar system, but Plaintiff asserted that he has never been provided with a copy of that contract. *Id.* at 7–8. Plaintiff further averred that he was never presented with or signed an E-Sign Consent form,[1] which meant that any applicable recission period was not properly provided. *Id.* at 8.

Nevertheless, the solar panels were installed in May of 2022, after which GoodLeap paid MC Solar for its services. *Id.* Thereafter, there apparently was an issue with permitting for the solar panels, and Plaintiff's property was cited for installing solar panels without a permit. *Id.* Additionally, Plaintiff claimed that the work was never completed on his solar system and that his solar system is inoperable as a result. *Id.* After having no luck getting "Defendants" to complete the remaining work,[2] Plaintiff received a written correspondence from GoodLeap, which advised him that GoodLeap would connect Plaintiff with another contractor to complete the required work on Plaintiff's solar system. *Id.* at 8–9. As a result, Plaintiff contended that "GOODLEAP is taking

---

[1] Plaintiff's citation to the E-Sign Act, at 15 U.S.C. §7001(c)(1)(a), provides that if there is a requirement for a transaction to be provided to a consumer in writing, an electronic record will suffice if the consumer affirmatively consents.

[2] It would appear that Plaintiff's mention of "Defendants" refers to MC Solar or MC Construction and not GoodLeap, which merely provided financing.

over for MC SOLAR and MC CONSTRUCTION based on the agreements under the FTC Holder Rule." *Id.* at 9.[3]

Based on these allegations, Plaintiff pled six counts against all Defendants. First, Plaintiff brought a Florida deceptive and unfair trade practices count. *Id.* Specifically, Plaintiff alleged that Defendants "offer and sell goods (in the form of roofing and solar panel materials and systems) and services (in the form of roofing services)" and employ unfair and deceptive acts to do so, such as "representation to homeowners that damage exists on a roof without a thorough inspection of the roof"; "the false representation of the utility of solar Solar [sic] system . . . that it would eliminate or virtually eliminate a utility bill"; "that the agreements between the parties were valid and binding, despite not giving the proper disclosures under the E-Sign Act"; "not allowing the Plaintiff to read the contract in depth at the time of signing"; "not correctly installing the Solar System"; "not properly permitting the Solar System"; and "not being unable to complete his contracts with consumers in the state of Florida . . . ." *Id.* at 9–10.

Second, Plaintiff asserted a fraud in the execution count, claiming he "was presented with an electronic document, which did not correctly afford Plaintiff time to review the contract in a manner that allowed them [sic] to form the intent to execute any agreement." *Id.* at 10. Further, Plaintiff argued that he was informed that the "contract he was signing mirrored the sales pitch he was presented with," but this was "patently false," as the solar system did not live up to Plaintiff's belief that it would eliminate his electricity bill. *Id.* Finally, Plaintiff alleged that "[t]he agreed upon 'deal' and the written 'deal' contain material changes, none of which were represented by the Defendants." *Id.*

---

[3] The FTC Holder Rule allows a debtor to assert any claim or defense against a holder of a consumer credit contract that it could assert against the seller. *See* 16 C.F.R. § 433.2; *see also Vilarinho v. Palmetto Sport Cars, Inc.*, No. 19-22680-CIV, 2020 WL 3772012, at *2 (S.D. Fla. July 7, 2020) ("Here, per the FTC Holder Rule, [the creditor] is subject to all claims and defenses that [the debtor] can assert against . . . the seller.").

Third, Plaintiff brought a rescission count, stating:

At the time of the transaction, the Defendants failed to give the necessary disclosures required under The E-Sign Act . . . and the Truth and Lending Act (TILA), including, but not limited to failing to provide statutorily required disclosures of a three day cooling off period as the sale occurred at the Plaintiff's Home, by not providing the actual cost of financing on the transaction as would be required under a Mortgage, and by not providing the E-Sign Consent ahead of delivering items to the Plaintiff electronically.

*Id.* at 11. Fourth, pleading in the alternative in the event a contract was found to exist between him and Defendants, Plaintiff raised a breach of contract count, arguing that the contract was for a solar panel system which would eliminate Plaintiff's need for electricity from the grid, but Defendants failed to uphold their end of the bargain. *Id.* at 12. Plaintiff's last two counts were a count for avoiding fraudulent transfers and a negligence count. *Id.* at 12–13.

GoodLeap responded to Plaintiff's complaint by filing a notice of removal to federal court,[4] *id.* at 1–3, and subsequently filed the present Amended Motion to Dismiss and to Compel Arbitration. DE 9. Attached to GoodLeap's motion is a copy of its loan agreement with Plaintiff, which indicates that it was electronically signed by Plaintiff. *See id.* at 12–32. Included in the loan agreement is an arbitration clause, which reads:

**15. Arbitration Agreement. All claims and disputes arising out of or relating to this Agreement (hereafter, "Dispute(s)") shall be resolved by binding arbitration on an individual basis. The arbitrator shall also decide any issues relating to the making, validity, enforcement, or scope of this arbitration agreement, arbitrability, defenses to arbitration including unconscionability, or the validity of the jury trial, class action or representative action waivers (collectively, "arbitrability" issues). YOU HEREBY WAIVE ANY CONSTITUTIONAL AND STATUTORY RIGHTS TO GO TO COURT AND HAVE A TRIAL IN FRONT OF A JURY. FURTHER, UNLESS YOU OPT OUT OF ARBITRATION, YOU ALSO AGREE TO WAIVE ANY RIGHT**

---

[4] The other Defendants have not filed a notice of appearance, and a clerk's entry of default has been entered against MC Construction. DE 27.

**TO BRING OR PARTICIPATE IN A CLASS OR REPRESENTATIVE ACTION IN COURT OR IN ARBITRATION.**

*Id.* at 19. Plaintiff's initials appear in the signature section for the arbitration agreement. *Id.* at 20.

## II.   ANALYSIS

The Federal Arbitration Act ("FAA") "leaves no room for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Hilton v. Fluent, LLC*, 297 F. Supp. 3d 1337, 1341 (S.D. Fla. 2018) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 213 (1985)). "In determining whether to compel arbitration, the Court considers three factors: (1) whether a valid written agreement to arbitrate exists, (2) whether an arbitrable issue exists, and (3) whether the right to arbitrate was waived." *Id.* As explained below, all three factors favor arbitration here; therefore, Plaintiff must arbitrate his claims against GoodLeap.

### A. There is a Valid Written Agreement to Arbitrate

"A threshold question in any motion to compel arbitration under the Federal Arbitration Act . . . is which issues should be decided by the trial court and which issues should be decided by an arbitrator." *Reiterman v. Abid*, 26 F.4th 1226, 1231 (11th Cir. 2022). To answer this question, "courts have identified three distinct types of challenges to motions to compel arbitration: '(1) a challenge to the validity of the arbitration clause standing alone, (2) a challenge to the validity of the contract as a whole, and (3) a challenge to the very existence of a contract.'" *Id.* (quoting *Wiand v. Schneiderman*, 778 F.3d 917, 924 (11th Cir. 2015)). If a challenge is to the existence of a contract or to the validity of an arbitration clause standing alone, a court must make a determination on those matters before compelling arbitration. *Id.* But if a court finds that "a contract containing a valid arbitration clause exists and that some or all of the claims in the lawsuit are contemplated by

5

the arbitration clause," then an arbitrator must decide any challenges to the validity of the contract. *Id.*

Here, while Plaintiff does attempt to challenge the validity of the arbitration clause,[5] his arguments are unpersuasive. As Plaintiff acknowledges in his response to GoodLeap's Amended Motion to Dismiss and to Compel Arbitration, his "suit is not based on any agreement between Plaintiff[] and Goodleap other than those applicable to it via the FTC Holder Rule," and his "claim does not arise from the loan agreement but the purported agreement between Plaintiff[] and Defendants, MODERN CONCEPTS CONSTRUCTION, LLC and MODERN CONCEPTS SOLAR AND ROOFING INC." DE 23 at 2, 4. Therefore, although Plaintiff does argue, inter alia, that the arbitration agreement was procured by fraud, *id.* at 5–10, his arguments are all based on alleged deficiencies with the purchase contract, a wholly separate and distinct contract, and not the loan agreement. Consequently, because Plaintiff never argues or demonstrates any specific procedural or substantive defect with the arbitration clause in the loan agreement, the Court finds that a valid written agreement to arbitrate exists between the Plaintiff and GoodLeap.

**B. Plaintiff and GoodLeap Have Delegated the Issue of Arbitrability to an Arbitrator**

"[I]f a valid [arbitration] agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Henry Shein, Inc. v. Archer & White Sales, Inc.*, 139 S.Ct. 524, 530 (2019); *see also Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1264 (11th Cir. 2017) ("Among other things, the parties may agree to arbitrate gateway questions of arbitrability including the enforceability, scope, applicability, and interpretation of the arbitration agreement."). Previously, some circuits had a "wholly groundless exception" to this rule where courts could scrutinize claims to determine whether they were actually covered by an

---

[5] Plaintiff never challenges the existence of the loan agreement between him and GoodLeap.

arbitration agreement. *See Jones*, 866 F.3d at 1268 (noting that the Sixth Circuit had held "even where the parties expressly delegate to the arbitrator the authority to decide the arbitrability of the claims related to the parties' arbitration agreement, this delegation applies only to claims that are at least <u>arguably</u> covered by the agreement." (quoting *Turi v. Main St. Adoption Servs., LLP*, 633 F.3d 496 (6th Cir. 2011))). However, the Supreme Court has flatly rejected the "wholly groundless" exception, holding that it was neither consistent with nor derived from the FAA. *Henry Schein, Inc.*, 139 S.Ct. at 528. Instead, the Court was clear that when the parties delegate arbitrability questions to an arbitrator, "a court possesses no power to decide the arbitrability issue." *Id.* at 529.

In the wake of *Henry Schein*, the Eleventh Circuit has utilized a two-part test to determine whether parties have agreed to delegate arbitrability issues to an arbitrator: (1) whether the parties clearly and unmistakably agreed to delegate questions of arbitrability to an arbitrator, and (2) whether the party seeking to avoid arbitration has specifically challenged the parties' delegation agreement. *See Attix v. Carrington Mortg. Servs., LLC*, 35 F.4th 1284, 1296 (11th Cir. 2022). The first inquiry is satisfied here, as the arbitration clause in the loan agreement unambiguously delegated arbitrability issues to the arbitrator. *See* DE 9 at 19 ("The arbitrator shall decide any issues relating to the making, validity, enforcement, or scope of this arbitration agreement, arbitrability, defenses to arbitration including unconscionability, or the validity of the jury trial, class action or representative action waivers (collectively, 'arbitrability' issues).").

The second step is also met here. Although Plaintiff attempts to raise a challenge to the delegation provision in his response to GoodLeap's Amended Motion to Dismiss and to Compel Arbitration, DE 23 at 4–5, his challenge lacks merit. Plaintiff includes one sentence of analysis for his purported challenge to the delegation provision, which states: "Here, it is, based on the non-disclosure to the Plaintiff of their [sic] rights to rescind." *Id.* at 5. Again, as Plaintiff has

7

acknowledged, his claims "do[] not arise from the loan agreement but the initial purported agreement between Plaintiff[] and Defendants, MODERN CONCEPTS CONSTRUCTION, LLC and MODERN CONCEPTS SOLAR AND ROOFIN INC." *Id.* at 4. Therefore, the Court is not convinced that Plaintiff has raised a sufficient or meritorious challenge to the delegation provision of the arbitration agreement by his attempt to conflate his challenges to the purchase contract with a challenge to the arbitration clause's delegation provision. Accordingly, it is for an arbitrator, and not the Court, to determine the arbitrable issues in this case. *See Attix*, 35 F.4th at 1304 ("But if the court finds that the challenge to the validity or enforceability of the delegation agreement lacks merit—or if no such challenge is made—the court must enforce the delegation agreement and send any challenges to the validity or enforceability of the primary arbitration agreement to the arbitrator.").

### C. GoodLeap Has Not Waived Arbitration

Finally, although Plaintiff argues that GoodLeap has waived its right to arbitration, DE 23 at 11, that is not the case. "The Eleventh Circuit has determined that under the FAA, a two-part test is used to establish a waiver of a right to demand arbitration." *Gomez v. Allied Pros. Ins. Co.*, 457 F. Supp. 3d 1351, 1363 (S.D. Fla. 2020). First, a court must determine whether the party demanding arbitration has acted inconsistently with the arbitration right, which occurs when the party "substantially invokes the litigation machinery prior to demanding arbitration." *Id.* (quoting *S&H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507, 1514 (11th Cir. 1990)). If this first prong is met, a court must then determine whether the demanding party's inconsistent acts have prejudiced the other party, which focuses on "the length of delay in demanding arbitration and the expense incurred by [the other] party from participating in the litigation process." *Id.* (quoting *S&H Contractors, Inc.*, 906 F.2d at 1514).

Here, GoodLeap has never acted inconsistently with its demand for arbitration. GoodLeap has only taken two actions in this litigation: (1) to remove the case to federal court, DE 1, and (2) to file a motion to dismiss and compel arbitration. DE 9. Removing a case to federal court is purely a procedural move and involves no substantive involvement with the case. Moreover, even if removing a claim to federal court was somehow inconsistent with a demand for arbitration, Plaintiff has not demonstrated any prejudice as a result. Therefore, GoodLeap has not waived its right to arbitration. *See de la Riva v. Suntrust Bank*, No. 21-24412-CIV, 2022 WL 3681998, at *8 (S.D. Fla. Apr. 14, 2022) ("[E]ven if Defendant had acted inconsistently with its right to arbitrate, Plaintiffs have failed to establish any prejudice.").

### D. The Claims Against GoodLeap Should be Stayed Pending Arbitration

Having established that Plaintiff must arbitrate his claims against GoodLeap, the last determination that needs to be made is whether to dismiss or stay those claims pending arbitration. Section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. Some courts in this district, however, have ruled that when all of a plaintiff's claims are subject to arbitration, the proper course of action is to dismiss the case instead of entering a stay. *See, e.g.*, *Perera v. H & R Block E. Enters., Inc.*, 914 F. Supp. 2d 1284, 1290 (S.D. Fla. 2012); *Hodgson v. NCL (Bahamas), Ltd.*, 151 F. Supp. 3d 1315, 1316 (S.D. Fla. 2015); *Olsher Metals Corp. v. Olsher*, No. 01-3212-CIV, 2003 WL 25600635, at *9 (S.D. Fla. Mar. 26, 2003). Nevertheless, the Court has previously determined that a stay is the more appropriate result where

the plaintiff had requested a stay, even though all claims in the plaintiff's complaint were submitted for arbitration. *See Clayborne v. Golden Krust Franchising, Inc.*, No. 0:22-CV-62018, 2023 WL 2244868, at *7 (S.D. Fla. Feb. 10, 2023), *report and recommendation adopted*, No. 22-62018-CIV, 2023 WL 2240449 (S.D. Fla. Feb. 27, 2023). Accordingly, although all of Plaintiff's claims against GoodLeap must be submitted to arbitration, those claims should be stayed, as Plaintiff has requested a stay if he is compelled to arbitrate. DE 23 at 13.

### III.  CONCLUSION

Accordingly, for the foregoing reasons, the Court recommends that Defendant GoodLeap LLC's Amended Motion to Dismiss and to Compel Arbitration [DE 9] be **GRANTED IN PART and DENIED IN PART.** To the extent GoodLeap's Motion seeks to compel arbitration, it should be **GRANTED**. But to the extent GoodLeap's Motion requests dismissal, it should be **DENIED**, as the claims against GoodLeap should be stayed pending arbitration.

Within fourteen days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(a).  The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1 (2014).

**DONE AND SUBMITTED** in Chambers at Fort Lauderdale, Florida, this 22nd day of September, 2023.

_____
PANAYOTTA AUGUSTIN-BIRCH
UNITED STATES MAGISTRATE JUDGE